UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JEFFREY W. BADER,

                        Plaintiff,                    **MEMORANDUM AND ORDER**

     -against-                                    08-CV-255 (SLT) (JMA)

THE GOLDMAN SACHS GROUP, INC., et al.,

                        Defendants.
------------------------------------------------------------------x

**TOWNES, United States District Judge:**

      Plaintiff Jeffrey W. Bader, brings this derivative action on behalf of Goldman Sachs Group, Inc. ("Goldman" or the "Corporation"), alleging that defendants violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and state law by filing a proxy statement on March 7, 2008 (the "2008 Proxy Statement"), that contained false and misleading information. Plaintiff also frames his allegations as a "direct action" on his own behalf. Plaintiff's second amended complaint ("SAC") alleges that the 2008 Proxy Statement, which asked the shareholders to vote on the Corporation's Board of Directors, misstated the "grant date present value" of stock options granted to the Corporation's officers and three of its employee directors in Fiscal Year 2007, thus misleading the stockholders as to the enormity of the compensation packages bestowed upon these individuals. This is the second of three actions which plaintiff has brought against Goldman since March 2007. This Court dismissed the first, which put forth similar allegations, and remanded the third, which plaintiff brought exclusively under state and common law.

Defendants now move to dismiss this action, arguing, inter alia, that (1) principles of res judicata and collateral estoppel apply; and (2) plaintiff failed to make a demand on Goldman's Board of Directors prior to commencing this action. Plaintiff responds that (1) his present action concerns new transactions governed by different regulations; and (2) such a demand would have been futile because a majority of the Corporation's directors were not disinterested and independent. In a separate motion, defendants also move to enjoin plaintiff or his counsel from (1) filing future claims in any court relating to the Corporation's valuation of employee stock options without first seeking leave from this Court; and (2) prosecuting Bader v. Winkelried, No. 09 Civ. 2607 ("Bader III") "until it is transferred to this Court."

For the following reasons, defendants' motion to dismiss is granted and defendants' motion for a permanent injunction is denied.

I. BACKGROUND

A. Procedural History

1. Bader I

Bader v. Blankfein, No. 07-CV-1130 ("Bader I"), was filed in this Court in May 2007 and alleged that Goldman, its directors and officers, violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Delaware State law by filing a proxy statement on February 21, 2007 (the "2007 Proxy Statement") that contained false and misleading information. Plaintiff's complaint alleged that the 2007 Proxy Statement, which asked the shareholders to vote on Goldman's Board of Directors, misstated the value of stock options granted to three directors and two other employees in Fiscal Year 2006, misleading stockholders

as to their compensation. On December 19, 2008, this Court granted defendants' motion to dismiss Bader I and held that plaintiff had failed to make the requisite pre-suit demand on the Goldman Board, as necessary under Delaware State law to institute a derivative case, and failed to plead particularized facts demonstrating that plaintiff's failure to make the demand was excused. Bader v. Blankfein, No. 07-CV-1130 (SLT) (JMA), 2008 WL 5274442, at *9 (E.D.N.Y. Dec. 19, 2008). The Second Circuit affirmed this Court's decision and the U.S. Supreme Court denied certiorari. Bader v. Blankfein, 356 F. App'x 471 (2d Cir. 2009), cert. denied, 2010 WL 978662 (U.S. May 17, 2010).

2. **Bader II**

The present action ("Bader II") was filed in this Court in January 2008 and bears great resemblance to Bader I. First, this action was brought against substantially the same defendants and its claims center on Goldman's disclosure of stock option valuations in its proxy statements. Second, as in Bader I, plaintiff now asserts derivative claims under Section 14 of the Securities and Exchange Act and under various State law theories, though he also asserts direct claims. (SAC ¶¶ 3, 4). Third, Bader II requests relief similar to that sought in Bader I, such as injunctions requiring the use of certain accounting practices and barring candidates from sitting on the Goldman Board unless they are elected pursuant to "a proper and lawful stockholder vote." (SAC ¶ 127).

Shortly after this action was filed, plaintiff moved to enjoin Goldman's annual shareholder meeting. This Court denied plaintiff's request for a preliminary injunction on February 14, 2008, and Goldman held its shareholder meeting on April 10, 2008. The Second

Circuit dismissed plaintiff's appeal of the denial of a preliminary injunction as moot. Bader v. The Goldman Sachs Group, Inc., 311 F. App'x 431, 433 (2d Cir. 2009). On May 12, 2009, defendants moved to enjoin plaintiff from future litigation and on August 6, 2010, moved to dismiss this action.

### 3. Bader III

On March 24, 2009, plaintiff commenced a third action against Goldman in State court, alleging breach of internal corporate governance protocols under state- and common-law causes of action. Although the Bader III complaint names many of the same defendants and is related to the manner in which Goldman estimated the present value of the stock options granted to senior management, Bader III differs from Bader I and Bader II in significant respects. Unlike the previous actions, Bader III was brought in State court and, as noted, raises exclusively state law claims under Delaware State law. There is no mention of proxy statements in the complaint and the relief requested is also different from that requested in the previous actions. On April 14, 2009, defendants removed this action to the United States District Court for the Southern District of New York on federal question grounds, and it was thereafter transferred to this Court. On July 29, 2010, this Court granted plaintiff's motion to remand in Bader III.

### B. 2008 Proxy Statement

Goldman, a Delaware corporation, is a global investment banking and securities firm, headquartered in New York City. At all times relevant to this action, its Board of Directors consisted of twelve members, each elected annually for a one-year term. Three of these director-

defendants are officers of Goldman: Lloyd C. Blankfein is Chairman of the Board and Chief Executive Officer, while Gary D. Cohn and Jon Winkelried are both presidents of the Corporation and co-Chief Operating Officers. (SAC ¶¶ 29-31). The other nine director-defendants, (SAC ¶¶ 19-27), are "independent," insofar as they have been determined by Goldman's Board of Directors not to have any direct or indirect material relationship with Goldman. See Policy Regarding Director Independence Determinations, at http://www2.goldmansachs.com/our-firm/investors/corporate-governance/corporate-governance-documents/policy-regarding-director.pdf (last visited Sept. 22, 2010). Plaintiff also names as defendants six executive vice presidents and the Corporation's principal accounting officer. (SAC ¶¶ 33-34).

On March 7, 2008 – approximately one month prior to the 2008 Annual Meeting of its shareholders – Goldman filed the 2008 Proxy Statement, which in part asked shareholders to re-elect twelve directors for year-long terms.[1] The 2008 Proxy Statement was prepared in accordance with Schedule 14-A, 17 C.F.R. § 240.14a-101, which prescribes the information that must be included in a proxy statement. Item 8 of Schedule 14-A provides that, if a proxy statement solicits action with regard to the election of directors, the proxy statement must include "the information required by Item 402 of Regulation S-K." Item 402, which is set forth at 17 C.F.R. § 229.402, mandates the disclosure of specific information relating to executive compensation.

Among the disclosures mandated by Item 402 is information concerning stock options granted by the corporation to the chief executive officer, chief financial officer, and the other

---

[1] A thirteenth board member, John Browne (also known as Lord Browne of Madingley), who was a defendant in Bader I, resigned in 2007. (See Decl. of David M.J. Rein, Esq., dated May 14, 2010 ("Rein Decl.") Ex. 2 at 5).

5

three most highly compensated executive officers during the preceding fiscal year. 17 C.F.R. § 229.402(a)(3). At the time the 2008 Proxy Statement was issued, Item 402(c)(2) dictated that this stock option information be presented in a table, listing, inter alia, "the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with FAS 123R." 17 C.F.R. § 229.402(c)(2)(vi). The regulations further required proxy statements to "[i]nclude a footnote . . . disclosing all assumptions made in the valuation . . . by reference to a discussion of those assumptions in the registrant's financial statements, footnotes to the financial statements, or discussion in the Management's Discussion and Analysis." Id. (Instruction to Item 402(c)(2)(vi)).

The relevant FAS 123R provision described the type of models acceptable for determining the fair value of an equity share. For example, if an observable market price is not available, "an entity shall estimate the fair value of that instrument using a valuation technique or model that meets the requirements in paragraph A8 and takes into account, at a minimum" certain factors. FAS 123R ¶ A18. In preparing the 2008 Proxy Statement, Goldman elected to provide the "grant date present value" of stock options granted to CEO Blankfein, CFO Viniar, and its three other most highly compensated executive officers: Presidents Cohn and Winkelried, and Chief Administrative Officer Edward C. Forst (who is not named as a defendant). (Rein Decl. Ex. 2 at 24). As required by Item 402(c)(2), the 2008 Proxy Statement explained the process used to achieve the dollar amount as to options, and directed shareholders to "a discussion of the calculation of the grant date fair value of the options" in the Corporation's "audited financial statements" in its "Annual Report on Form 10-K." (Id. Ex. 2 at 25(d); Ex. 11 at 164). The financial statement itself noted that "fair value of options . . . was estimated as of

6

the grant date based on a Black-Scholes option-pricing model[2]" and provided a chart of the principle assumptions . (Id. Ex. 11 at 164). The use of such an option-pricing model is expressly contemplated by FAS 123R. See FAS 123R ¶¶ 22, A18. Additionally, the 2008 Proxy Statement directed shareholders to specific information concerning plaintiff's 2007 and 2008 actions in this Court and explained that he was challenging the options valuation methodology. (Rein Decl. Ex. 2 at 25(d), 38).

On January 17, 2008, plaintiff, a Goldman stockholder, commenced this action pursuant to section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and state law, and initially sought "to enjoin the distribution of what will be a materially false or misleading 2008 Proxy Statement." (SAC ¶ 5).[3] After the 2008 Proxy Statement was issued, plaintiff twice amended his complaint, ultimately adding "direct" claims that tracked the same facts alleged in the derivative action. (Id. ¶ 4). Referencing his allegations in Bader I, plaintiff alleges in this action that the valuation of options set forth in the 2008 Proxy Statement was "materially false." (Id. ¶¶ 5, 8-10).

---

[2] The Black-Scholes model calculates "a theoretical call price (ignoring dividends paid during the life of the option) using the five key determinants of an option's price: stock price, strike price, volatility, time to expiration, and short-term (risk free) interest rate." See Option Pricing Models, at http://www.hoadley.net/options/bs.htm (last visited Sept. 22, 2010).

[3] Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), makes it unlawful to solicit a proxy "in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe." One such rule – Rule 14a-9, 17 C.F.R. § 240.14a-9 – prohibits solicitation of a proxy by means of a proxy statement that is "false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. Rule 12(b)(6) Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. Although a complaint need not include "detailed factual allegations," a plaintiff must do more than put forth "labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To withstand a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and must plead facts sufficient "to state a claim to relief that is plausible on its face." Id. at 555, 570. As the Supreme Court has noted, this plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In short, the plaintiff's factual allegations must show that the plaintiff's claim is "plausible," not merely "conceivable." Id. at 1950-51. Additionally, a court may consider any written instrument incorporated by reference or attached as an exhibit in deciding the legal sufficiency of a claim. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

In Bader I, this Court dismissed the derivative action because plaintiff failed to allege adequately that he was excused from making a pre-suit demand on the Goldman Board. Bader, 2008 WL 5274442, at *9. Defendants now move to dismiss the second amended complaint in this action, arguing, inter alia, that (1) the doctrines of res judicata and collateral estoppel preclude plaintiff from relitigating the issue of pre-suit demand; and (2) plaintiff has not

adequately pleaded any ground to excuse demand, pursuant to Federal Rule of Civil Procedure 23.1 ("Rule 23.1"). Plaintiff argues that the preclusion doctrines do not apply, that his direct claims are legitimate, and that demand would be futile.

### 2. Demand Requirement

A derivative action, which "permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties," provides shareholders with a mechanism to "protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991) (internal quotations and emphasis omitted). To avoid abuse of this option, "equity courts established as a precondition 'for the suit' that the shareholder demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'" Kamen, 500 U.S. at 96 (quoting Ross v. Bernhard, 396 U.S. 531, 534 (1970)). Codifying this requirement, Rule 23.1 provides that a shareholder derivative action complaint "shall . . . state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). Put simply, a plaintiff in a derivative action must allege either that he has made a demand on the board, or why such a demand would be futile.

In this case, plaintiff's second amended complaint states that Bader II is both a derivative and a direct action. (SAC ¶¶ 3, 4). Accordingly, this Court must first determine whether plaintiff's latest pleading is merely "creatively attempting to recast a derivative claim by alleging

9

the same fundamental harm in a slightly different way." Feldman v. Cutaia, 951 A.2d 727, 730 (Del. 2008) (internal quotation marks omitted). The Delaware Supreme Court has established that whether a stockholder's claim is derivative or direct turns exclusively on two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004). As to the first question, Delaware courts have "characterized the relevant inquiry as '[l]ooking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?'" Marcus v. Lincolnshire Management, Inc., 409 F. Supp. 2d 474, 480 (S.D.N.Y. 2006) (quoting Agostino v. Hicks, No. Civ. A. 20020-NC, 2004 WL 443987, at *7 (Del. Ch. Mar. 11, 2004)).

Though couched cosmetically as direct claims free from Rule 23.1's demand requirement, the harms alleged in the second amended complaint are in fact to the Corporation. Indeed, the direct claims, (SAC ¶¶ 125-27), rely on the very same facts, (SAC ¶¶ 1-5; 8-112), cited in support of the derivative action, ( SAC ¶ 115). Additionally, a finding that defendants incorrectly valued stock options, overcompensated officers and directors, breached disclosure requirements, and disseminated a misleading proxy statement would lead to recovery for the Corporation, not plaintiff individually. Finally, it is telling that the remedies listed in plaintiff's original Bader II complaint – filed solely as a derivative action – are nearly identical to those listed in his second amended complaint. Under the Tooley analysis, plaintiff's claims are

appropriately characterized as a derivative action and therefore are subject to the demand requirement pursuant to Rule 23.1.

### 3. Res Judicata and Collateral Estoppel

In their motion to dismiss, defendants contend that plaintiff is precluded from asserting demand futility because the same issue was already litigated in Bader I. The doctrine of res judicata, or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Monahan v. New York City Dept. of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). To establish res judicata, a party must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same parties or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Id. at 285 (citing Allen, 449 U.S. at 94).

More narrowly, the doctrine of collateral estoppel, or issue preclusion, bars a plaintiff from relitigating "an issue of fact or law that was fully and fairly litigated in a prior proceeding." Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003). The party seeking to invoke either preclusion doctrine has the burden of establishing its applicability. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997) (citing Thomas v. New York City, 814 F. Supp. 1139, 1148 (E.D.N.Y. 1993)).

Both parties agree that In re Sonus Networks, Inc. S'holder Derivative Litig., 499 F.3d 47 (1st Cir. 2007) is the leading federal case regarding preclusion in shareholder litigation. (Defs.'

Mem. at 7; Pl.'s Opp. at 5). There, the First Circuit concluded that "dismissal for failure to plead demand under Rule 23.1 is not entirely analogous to dismissal for failure to state a claim," and although such dismissal is "on the merits in the sense that it is entitled issue-preclusive effect," it is not "on the merits in the sense that no further suit could be brought on the same claim." Sonus, 499 F.3d at 62 (emphasis added) (internal quotation marks omitted). While the claims in Bader I and Bader II are strikingly similar, it is inappropriate to apply claim preclusion in this case, especially where there are some differences in the plaintiff's claims, none of which this Court has needed to reach.

In contrast, collateral estoppel bars religitation of the same issue adjudicated in an earlier judgment, even if there is not complete identity between the issues. Id. at 62. The question at the heart of the collateral estoppel inquiry is whether "anything in the Second Amended Complaint . . . amounts to a 'significant change' in the futility issue from what was presented" in the prior action. Id. (citations omitted). While a plaintiff should be allowed "to plead new events that happened after the first litigation was dismissed," he should not be allowed to "plead facts that ha[ve] already occurred and could have been pleaded in the first suit." Id. at 63.

First, the demand futility issue in this case is, on its face, the same issue plaintiff litigated in Bader I with respect to what is essentially the same Goldman Board. Second, the record indicates that plaintiff had access to information before dismissal of Bader I that he later used to buttress support for demand futility in Bader II. As plaintiff himself notes, his original Bader II complaint was filed on January 18, 2008, nearly a year before this Court dismissed Bader I. (SAC ¶ 8). He also explains that Bader II "is related to an earlier action commenced in this court by this plaintiff" and that the "individual defendants' misconduct concerning the 2007 Proxy

12

Statement continues in respect of the 2008 Proxy Statement." (Id. ¶ 9) (emphasis added). Certain 2007 SEC forms and the 2008 Proxy Statement, which allegedly demonstrate defendants "continued . . . systematic wrongdoing," (id. ¶¶ 10, 51), were also available to him well before Bader I's dismissal.

Moreover, when plaintiff offered additional facts in support of demand futility during appeal of Bader I – allegations he ultimately included in his Bader II second amended complaint – the Second Circuit found that plaintiff's "complaint[,] [even if amended, would] not create a reasonable doubt that the majority of the directors are disinterested and independent, and therefore fails to establish that it would have been futile to make demand upon Goldman's Board of Directors prior to commencing this action." Bader, 356 F. App'x at 474 (bracketing in original; emphasis added; citation omitted). Therefore, not only does plaintiff appear to "plead facts that ha[ve] already occurred and could have been pleaded the first suit," Sonus, 499 F.3d at 63, but the Second Circuit indicates that even if plaintiff had included the additional allegations in Bader I, he still would have failed to establish demand futility.

For these reasons, plaintiff is precluded on collateral estoppel grounds from relitigating the issue of demand futility and there is no need for this Court to consider defendants' remaining grounds for dismissal.

### B. Permanent Injunction Motion

Defendants bring this motion pursuant to the All Writs Act, 28 U.S.C. § 1651, which provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of

law." 28 U.S.C. § 1651(a). Under the Act, a district court has the authority to "sanction a prolific litigant who abuses the judicial process by repeatedly suing defendants on meritless grounds and enjoin him from pursuing future litigation without leave of the court." Davey v. Dolan, 453 F. Supp. 2d 749, 755-56 (S.D.N.Y. 2006). In particular, defendants argue that "notwithstanding Bader's cosmetic manipulation of his allegations, the Bader III complaint clearly seeks to circumvent this Court's jurisdiction and relitigate issues that this court previously decided in Bader I." (Defs.' Mem. at 8).

The Second Circuit has articulated five factors for determining whether to enjoin a party from future filings:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id.

This Court concludes that, although it has jurisdiction to issue the injunction against future litigation, such action is unnecessary at this point. Plaintiff's legal theory may well be "deeply flawed" and his "'real' purpose in bringing this action, coming right on the heels of the setback in the earlier action, is highly suspect." Kenney, Becker LLP v. Kenney, 494 F. Supp. 2d 252, 255 (S.D.N.Y. 2007). Even so, defendants' motion fails. First, this Court has never reached plaintiff's substantive claims. Second, this Court has already found the claims alleged in

14

Bader III different enough from those in the previous two suits to warrant remand to State court. Third, the scope of defendants' proposed injunction, which would bar plaintiff from bringing future valuation claims against Goldman without first seeking leave, is far broader than the narrow issue of demand futility that this Court has just given preclusive effect. Should plaintiff or his counsel commence another action against Goldman asserting demand futility, however, this Court might reconsider the appropriateness of injunctive or other relief. See Kenney, 494 F. Supp. at 256.

## III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Docket No. 80) is granted on collateral estoppel grounds, but defendants' separate injunction motion (Docket No. 45) is denied in all respects. Additionally, as all outstanding motions have now been resolved in Bader II and Bader III, the objections raised in defendants' letter to this Court, dated September 17, 2010 (Docket No. 93), are moot. The Clerk of Court is directed to close this case.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: September 30, 2010
       Brooklyn, New York